**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BEARING BROKERS, INC. et al. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-09430 |
| | ) | |
| CREDIT MANAGEMENT ASSOCIATION, INC., et al. | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |
| | ) | |
| CREDIT MANAGEMENT ASSOCIATION | ) | |
| | ) | |
| Defendant/Third Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WESTFAX, INC. | ) | |
| | ) | |
| Third Party Defendant | ) | |
| _____ | ) | |

## <u>THIRD-PARTY DEFENDANT WESTFAX'S MOTION TO DISMISS THIRD-PARTY PLAINTIFF COMPLAINT</u>

Third-Party Defendant, Westfax, Inc. ("Westfax"), by its undersigned attorney William B. Hayes pursuant to Sections 12b(6) and 12(c) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Complaint of Third-Party Plaintiff Credit Management Association ("CMA"). In support of its Motion, Westfax states as follows:

### I.    <u>STATEMENT OF FACTS</u>

1.    Westfax is engaged in the lawful business of broadcasting facsimiles for its customers.

2.     Westfax entered into a Customer Agreement with CMA to provide fax broadcasting services. The Customer Agreement that Westfax entered into with Defendant is attached as <u>Exhibit 1</u>.

3.     The Customer Agreement that Westfax entered into with CMA expressly provides that Westfax's customer is solely responsible for compliance with federal and state laws including the TCPA and will not sue Westfax. Paragraph 4 of the Customer Agreement provides as follows:

> **<u>COMPLIANCE WITH LAW.</u>**    The customer acknowledges and agrees that Westfax is in the business of providing the medium to enable the Customer to make broadcast fax communications. Westfax is merely the agent providing the technology and the medium for the Customer to send the broadcast fax and is not the advertiser or otherwise involved in any content contained in the fax broadcast communication. Westfax will provide its services only in strict compliance with applicable federal, state and local laws, rules and regulations. By requesting Westfax to provide services for its benefit, the Customer acknowledges and agrees that it will fully comply with such laws, rules and regulations, including in particular, the Telephone Consumer Protection Act ("TCPA") and all state laws similar or related thereto. **The Customer agrees to fully release and discharge Westfax from any violation of any law or regulation, not to bring suit or any other claim against Westfax on account of such laws,** and to fully defend, pay any damages and hold Westfax harmless from any violations of such federal, state and local laws, rules and regulations. (Emphasis added).

4.     Plaintiff alleges Defendant sent an unsolicited fax ad without prior express invitation or permission or pursuant to an established business relationship in violation of the TCPA and ILCS.

5.     Defendant's allegations that Westfax's "Broadcast Fax" service, representations and expertise are directly contradicted by the Customer Agreement signed by Defendant on May 6, 2010. Any reliance upon a representation would not be reasonable, justified or in good faith

after signing the Customer Agreement.  Any lawsuit would similarly be negated by the terms and conditions of the signed Customer Agreement.

6.      Defendant selected, free of charge, an automated toll free number from Westfax for use as a removal number for its facsimiles so that persons to whom facsimiles were sent could opt-out from receiving future faxes.  Defendant's election to use the automated toll-free number only required Westfax to accept and forward do-not-fax requests as prescribed by the FCC.  When a fax recipient who elects to opt out dials the toll free number, the process is automatic and self-executing and does not involve any contact or communication with any personnel at Westfax.

## II.      STANDARD OF REVIEW

When a party moves to dismiss under Section 12(b)(6) of the Federal Rules of Civil Procedure, but presents with its motion evidence of matters outside the pleadings, a court may treat the motion as one for summary judgment and dispose of it under Rule 56.  Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law".

## III.      LAW AND ARGUMENT

### A.      Westfax Is Entitled To Be Dismissed Pursuant to the Terms of the Customer Agreement

In the Customer Agreement, the Customer acknowledges and agrees that it will fully comply with such laws, rules and regulations, including in particular, the Telephone Consumer Protections Act ("TCPA") and all state laws similar or related thereto.  The Customer agrees to fully release and discharge Westfax from any violation of any law or regulation, not to bring suit or any other claim against Westfax on account of such laws, and to fully defend, pay any

damages and hold Westfax harmless from any violations of such federal, state and local laws, rules and regulations.

The Customer Agreement further limits Westfax's total liability for damages to the Customer or any third party to the amount charged the Customer for Westfax's services.

The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Recipients of unsolicited fax advertisements have a private right of action under § 227(b)(3) of the TCPA, which provides:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring an action in an appropriate court of that State:
>
> (A)     an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)     an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C)     both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. §227 (b)(3).

The TCPA expressly makes the FCC responsible for creating, enforcing, implementing, and interpreting the TCPA's facsimile advertising rules. Per the FCC,

> "…the sender is the person or entity on whose behalf the advertisement is sent.  In most instances, this will be the entity whose product or service is advertised or promoted in the message…. [T]he sender is liable for violations of the facsimile advertising rules, including failure to honor opt-

out requests. Accordingly, [the FCC] adopted a definition of a sender for purposes of the facsimile advertising rules."

*See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005,* No. 02-278, 21 F.C.C.R. 3787, 3808 (FCC Rcd. 2006).

Section 64.1200(f)(8) of Title 47 of the Code of Federal Regulations defines a "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."

The facsimile(s) at issue in this case will show that Westfax was not the "sender." The fax was not sent on Westfax's behalf and Westfax and its goods and services are not contained, mentioned, or referred to anywhere on any of the facsimile.

Section 64.1200(f)(6) of the FCC Regulations defines a "facsimile broadcaster" as "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee."

Westfax's Customer Agreement clearly shows that Westfax was a facsimile broadcaster for its customer.

The FCC's Report and Order and Third Order on Reconsideration Released April 6, 2006 contained the implementing regulations for the "opt out" rules of the Junk Fax Prevention Act of 2005 ("JFPA"). The Report and Order clearly states:

> We conclude that <u>the sender</u> – the business on whose behalf the fax is transmitted – is responsible for complying with the opt-out notice requirements and for honoring opt-out requests. Regardless of whether the sender includes its own contact information in the opt-out notice or the contact information of a third party retained to accept opt-out requests, the sender is liable for any violations of the rules. . . . Third parties, including fax broadcasters, need only accept and forward do-not-fax requests to the extent the underlying business contracts out such responsibilities to them.

21 F.C.C.R. at 3807 (emphasis added).

The FCC expressly contemplated and permitted third parties, including fax broadcasters to provide removal numbers and perform such opt- out services without being highly involved and without further responsibility or liability. The opt-out services are automatic and self-executing and do not involve any contact or communication with the senders, recipients or any personnel at Westfax. Thus, accepting and forwarding opt-out requests, is not unlawful, is an automated function, and occurs after a facsimile is sent. In *Taylor v. XRG, Inc.*, the Court of Appeals of Ohio found as follows:

> According to the evidence submitted in connection with XO's summary judgment motion, XO Interactive entered into a written contract with DRS on or about June 23, 2003 to provide DRS with a custom Interactive Voice Response ("IVR") service. The IVR provided technology that allowed DRS's customers to call 12 toll-free numbers. Those numbers would prompt callers, using a prerecorded message, to select one of the following options: (1) remove their fax number from the database, (2) add it to the database, or (3) leave a message consisting of a name and phone number. The IVR service gathered data that callers entered into the system and forwarded it to DRS. XO Interactive did not have access to DRS's fax number database and did not add or remove fax numbers from it.
>
> XO Communications provided and managed the toll-free numbers that were routed to the IVR application. Because the toll-free numbers only could accept inbound calls but could not place out-bound calls, faxes could not be sent from the toll-free numbers. XO did not send unsolicited faxes on behalf of its customers or anyone else and did not control the content of any advertisements. XO averred through Cox that XO is merely a common carrier and did not originate or control any unsolicited fax advertisements.
>
> In granting XO's motion for summary judgment, the court concluded plaintiff failed to produce any evidence attributing the unsolicited fax ads to XO. The trial court overruled plaintiff's "motion to supplement," stating the court could not consider the unauthenticated documents plaintiff submitted following XO's second document production. The court further noted that, even if the court considered the documents, nothing demonstrated that XO either sent the unsolicited fax ads to plaintiff or maintained a high

degree of involvement in, or had actual notice of, unlawful activity and failed to take steps to prevent such activity.

According to the trial court, XO at most removed names and numbers from the list of people who were sent faxes. Based on the evidence, the trial court determined XO was not liable under the TCPA because XO was merely a common carrier responsible for maintaining and controlling the removal numbers. <u>Because the trial court concluded that XO's controlling removal numbers could not be a basis for liability under the TCPA, the court found plaintiff's claim under the OCSPA likewise failed.</u>

No. 06AP-839, 2007 WL 1816142, at *2 (Ohio Ct. App. June 21, 2007)(emphasis added) (internal citations omitted). The appellate court then affirmed the trial court's finding that removing names and numbers from a facsimile database is insufficient to establish liability under the TCPA. Similarly, Westfax's making available an automated toll free number to its customer to allow recipients of the customer's faxes to be removed from the customer's fax list and opt out of receiving future faxes is insufficient to establish liability against Westfax under the TCPA in this case.

WHEREFORE, Third-Party Defendant Westfax, Inc., respectfully requests that the Court dismiss Third-Party Plaintiff CMA's Third Party Complaint and provide Westfax with all just and appropriate relief, including costs and reasonable attorney fees incurred as provided in the Customer Agreement. Dated April 11, 2013.

William B. Hayes              /s/  
William B. Hayes, Esquire  
257 Jackson Street  
Denver, Colorado  80206  
303 514 0658; 303 291 3368 facsimile  
email: sqhayes@aol.com  
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and accurate copy of the foregoing **THIRD PARTY DEFENDANT WESTFAX, INC. MOTION TO DISMISS** was sent via email through the Court's ECF system, this 11th day of April, 2013, to:

<u>**Served via ECF**</u>:
Heather A. Kolbus, Esq.
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
*Attorney for Plaintiff*

Bradley S. Levison
Wilson, Elsner, Moskowitz, Edelman & Dicker, LLP
55 W. Monroe Street, Suite 3800
Chicago, Illinois 60603
*Attorney for Defendant*

<u>William B. Hayes /s/</u>

William B. Hayes
257 Jackson Street
Denver, Colorado 80206
303 514 0658